UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DEFENDERS OF WILDLIFE <br> 1130 Seventeenth Street, N.W. <br> Washington, D.C. 20036 <br> (202) 682-9400, <br><br> and <br><br> SIERRA CLUB <br> 85 Second Street, 2nd Floor <br> San Francisco, CA 94105 <br> (415) 977-5500, <br><br> Plaintiffs, <br><br> vs. <br><br> MICHAEL CHERTOFF, Secretary <br> U.S. Department of Homeland Security <br> Washington, D.C. 20528, <br><br> U.S. DEPARTMENT OF HOMELAND SECURITY <br> Washington, D.C. 20528, <br><br> DIRK KEMPTHORNE, Secretary <br> U.S. Department of the Interior <br> 1849 C Street, N.W. <br> Washington, D.C. 20240, <br><br> U.S. DEPARTMENT OF THE INTERIOR <br> 1849 C Street, N.W. <br> Washington, D.C. 20240, <br><br> JIM CASWELL, Director <br> Bureau of Land Management <br> 1849 C Street, N.W. <br> Washington, D.C. 20240, <br><br> BUREAU OF LAND MANAGEMENT <br> 1849 C Street, N.W. <br> Washington, D.C. 20240, | Case No: 07-1801 (ESH) <br><br> **FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

```
LIEUTENANT GENERAL ROBERT L. VAN )
ANTWERP, Commander and Chief of   )
Engineers                          )
U.S. Army Corps of Engineers      )
441 G Street, N.W.                )
Washington, D.C.  20314-1000,     )
                                   )
and                                )
                                   )
U.S. ARMY CORPS OF ENGINEERS      )
441 G Street, N.W.                )
Washington, D.C.  20314-1000,     )
                                   )
                                   )
        Defendants.                )
                                   )
```

## INTRODUCTORY STATEMENT

1.      This case challenges the Bureau of Land Management's ("BLM") and Department of the Interior's ("DOI") grant of a right-of-way to the U.S. Army Corps of Engineers ("Corps"), on behalf of Department of Homeland Security ("DHS"), to construct a border wall, vehicle barriers and all-weather road on the San Pedro Riparian National Conservation Area ("San Pedro NCA"), located on the U.S.-Mexico international border in southeast Arizona. The San Pedro NCA protects the San Pedro River, one of the last remaining free-flowing rivers in the Southwestern United States, and the rich cultural and biological resources in the river's riparian corridor. Plaintiffs contend that by granting the right-of-way based on a cursory Environmental Assessment addressing only a small segment of a much larger border wall project, defendants are violating the National Environmental Policy Act, 42 U.S.C. § 4321, et seq., the Arizona-Idaho Conservation Act, 16 U.S.C. § 460xx-1, and the Administrative Procedure Act. 5 U.S.C. § 706.

2.      After this Court issued a Temporary Restraining Order ("TRO") on October 10, 2007, the Secretary of Homeland Security ("DHS Secretary") issued a waiver of the application of these laws to this project, pursuant to Section 102(c)(1) of the REAL ID Act, Pub. L. No. 109-13; 8 U.S.C. § 1103 Note. By this Amended Complaint, plaintiffs allege that the Secretary's

1

waiver, and the authority to waive all laws provided by the REAL ID Act, violate the U.S. Constitution's principles of Separation of Powers, and specifically, Article 1, Section 1, which directs that "[a]ll legislative Powers herein granted shall be vested in a Congress of the United States."

## JURISDICTION AND VENUE

3.  This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1361, because the Complaint alleges violations of the laws of the United States and seeks to compel defendants to perform duties owed to plaintiffs. The Court also has jurisdiction over this action pursuant to 5 U.S.C. § 701 et seq., because the Complaint seeks judicial review of action taken by one or more agencies of the United States.

4.  This Court has jurisdiction to hear plaintiffs' constitutional claims pursuant to the REAL ID Act Section 102(c)(2)(A); Pub. L. No. 109-13, 8 U.S.C. § 1103 Note.

5.  Venue is proper in this Court under 28 U.S.C. § 1391(e), because defendants are agencies of the United States and reside in the District of Columbia.

## PARTIES

6.  Plaintiff Defenders of Wildlife ("Defenders") is a national, nonprofit membership organization with more than 500,000 members dedicated to the protection of all native animals and plants in their natural communities, with its headquarters in Washington, D.C. Defenders' mission is to preserve wildlife and emphasize appreciation and protection for all species in their ecological role within the natural environment through education, advocacy, and other efforts. Defenders maintains a Field Office with five full-time employees in Tucson, Arizona, and has more than 5,000 active members in the state.

7.  Defenders has organizational and membership-based interests in the preservation and conservation of the San Pedro NCA and the borderlands of the Southwestern United States that will be harmed by construction of the border wall and road at issue in this case. For more than a decade, Defenders has worked for the protection of borderland wildlife, including threatened or endangered species such as the Sonoran pronghorn, northern jaguar, and cactus

2

ferruginous pygmy-owl, and for proper management of federal lands within the "Sky Island" and Sonoran desert ecosystems that predominate along the Arizona border. Defenders has played a leading role in efforts to educate the public and advocate for better integration of environmental considerations into immigration policy generally, and into border security efforts specifically. Defenders' efforts have included the 2006 publication of a report, <u>On the Line: The Impacts of Immigration Policy on Wildlife and Habitat in the Arizona Borderlands</u>, which featured the San Pedro NCA on its cover, and the convening of an annual collaborative meeting of borderlands stakeholders in an effort to formulate solutions to the issue of border security and its effect on the natural environment, culminating this year in the publication of <u>Addressing the Impacts of Border Security Activities on Wildlife and Habitat in Southern Arizona: Stakeholder Recommendations</u>.

8. Defenders' members live near and regularly visit the San Pedro NCA for wildlife observation, recreation, and other uses. Defenders' members also live in other areas along the Arizona border adversely impacted by the border wall projects being constructed throughout the area. All of these members have aesthetic, educational, professional, health, and spiritual interests that will be harmed by (a) the environmental impacts that will result from BLM's grant of a right-of-way to the Corps for the construction of a border wall and road within the San Pedro NCA, and the construction of other border wall projects along the Arizona border, (b) Defendants' failure to comply with NEPA and the Arizona-Idaho Conservation Act of 1988, and (c) the DHS Secretary's decision to waive nineteen laws in connection with the San Pedro NCA border wall, and the unconstitutional grant of legislative powers to the DHS Secretary contained in section 102 of the REAL ID Act.

9. Sierra Club is a non-profit national organization with more than 1.2 million members dedicated to exploring, enjoying, and protecting the wild places of the earth, practicing and promoting the responsible use of the earth's ecosystems and resources, educating and enlisting humanity to protect and restore the quality of the natural and human environment, and using all lawful means to carry out these objectives. Sierra Club's headquarters is in San

3

Francisco, California. Sierra Club's Grand Canyon Chapter has 14,000 members in Arizona, and maintains offices in Phoenix and Flagstaff.

10. Sierra Club's members reside near and regularly visit the San Pedro NCA to engage in outdoor recreation, wildlife observation, scientific and other activities. Sierra Club's members also live in other areas along the Arizona border adversely impacted by the border wall projects being constructed throughout the area. All of these members have aesthetic, educational, professional, health, and spiritual interests that will be harmed by (a) the environmental impacts that will result from BLM's grant of a right-of-way to the Corps for the construction of a border wall and road within the San Pedro NCA, and the construction of other border wall projects along the Arizona border, (b) Defendants' failure to comply with NEPA and the Arizona-Idaho Conservation Act of 1988, and (c) the DHS Secretary's decision to waive nineteen laws in connection with the San Pedro NCA border wall, and the unconstitutional grant of legislative powers to the DHS Secretary contained in section 102 of the REAL ID Act.

11. Defendant DHS is a cabinet-level agency of the executive branch, and is responsible, inter alia, for the administration of laws relating to immigration, including border security.

12. Defendant Michael Chertoff is the DHS Secretary.

13. Defendant BLM is an agency of the Department of the Interior, responsible for the administration and management of the San Pedro NCA, and for ensuring that no actions are taken that do not further the San Pedro NCA's primary purposes, which include the conservation, protection, and enhancement of the NCA's riparian area as well as its aquatic, wildlife, archeological, paleontological, scientific, cultural, educational, and recreational resources.

14. Defendant Jim Caswell is the Director of BLM.

15. Defendant U.S. Department of the Interior ("DOI") is a cabinet-level agency of the executive branch. The parent agency of BLM, DOI is responsible for the administration, management, and protection of our Nation's federal lands, including those administered by the BLM, National Park Service, and U.S. Fish and Wildlife Service.

4

16.     Defendant Dirk Kempthorne is the Secretary of DOI.

17.     Defendant Corps is an agency of the Department of Defense, and applied on behalf of the Department of Homeland Security for the perpetual right-of-way on the San Pedro NCA in order to undertake construction of the border wall and road at issue in this case.

18.     Defendant Lieutenant General Robert L. Van Antwerp is the Commander and Chief of Engineers of the Corps.

**FACTUAL ALLEGATIONS**

A.      The San Pedro NCA and Developments Prior To This Suit

19.     The San Pedro River is a unique and invaluable environmental resource—a free-flowing river whose perennial flow is now a rare occurrence in the Southwest.  In 1988, approximately 40 miles of the upper San Pedro River corridor administered by the BLM was designated by Congress as the nation's first Riparian National Conservation Area, and the river and its larger watershed are widely recognized as one of the most biologically diverse areas in North America.  The San Pedro is particularly renowned for its avian diversity; in addition to attracting tens of thousands of birders each year, it was recognized by the National Audubon Society as its first Globally Important Bird Area and designated as a World Heritage Natural Area by the United Nations World Heritage Program.  The San Pedro River and its watershed provide habitat for a great diversity of mammals, reptiles, insect, and plant species.  A bi-national resource, the headwaters of the San Pedro begin near the town of Cananea, Sonora, Mexico, and the river flows approximately 25 miles before crossing the U.S.-Mexico border and into the San Pedro NCA.

20.     On August 10, 2007, the Corps submitted a right-of-way application on behalf of DHS to build "pedestrian fencing" and an all-weather road along the San Pedro NCA's southern boundary.

21.     On August 31, 2007, without public notification or opportunity for public comment, BLM issued the "Final" Border Fence EA, Decision Record, and Finding of No Significant Impact ("FONSI").  BLM's decision authorizes construction of a 14-17 foot high

5

wall along the entire two mile southern boundary of the San Pedro NCA, except for 1,490 feet within the river and its floodplain and a historic corral area, where "temporary vehicle barriers" will be installed, and 275 feet in five dry washes along the NCA boundary, in which permanent vehicle barriers would be installed rather than a wall. Under BLM's decision, the "temporary" vehicle barriers would apparently be removed by crane during periods of seasonal flooding.

22.     The proposed border wall and vehicle barriers will cross the San Pedro River and its floodplain, as well as 30 ephemeral drainages to the east of the River, and 36 ephemeral drainages to the west of the River. Field observations of border walls constructed in adjacent areas demonstrate that the construction will likely result in bank erosion, channel incision, and sedimentation into the San Pedro River, which may cause the River to adjust laterally, causing bank failure and loss of riparian vegetation.

23.     Construction of the wall will also irreparably harm wildlife. Many subtropical mammal species reach the northern extent of their ranges in this area, including jaguars, ocelots, white-nosed coatis, hooded skunks, Mexican fox squirrels, Merriam's deermice, Coue's deer, white-sided jackrabbits, and the Sonoran subspecies of the Virginia opossum, as well as a large variety of birds and reptiles, and a diverse flora. Because the biological integrity of the wildlife populations in this region relies on genetic interchange, construction of border fencing and roads presents serious threats to long-term survival of wildlife on the border.

24.     The San Pedro project is part of a considerably larger contiguous border wall being constructed between this segment and Douglas, Arizona. The project is one of six or more border wall construction projects that have been proposed, undertaken, or completed in Arizona since January 2007. In addition to the San Pedro NCA, border wall projects have been proposed, undertaken, or completed on Barry M. Goldwater Range, Organ Pipe Cactus National Monument, and Buenos Aires National Wildlife Refuge.

25.     Defendants intend to construct additional border wall segments in Arizona in the coming months. On information and belief, the DHS Secretary will invoke the REAL ID waiver authority with respect to some of these border wall segments as well.

26. On or about October 3, 2007, defendants and/or their contractors began construction and ground-disturbing activities related to construction of the proposed border wall and/or the road on the San Pedro NCA.

B. Events Subsequent To This Suit

27. In light of the commencement of work on the border wall, plaintiffs filed suit on October 5, 2007, as well as a Motion for TRO. Plaintiffs argued that by issuing a cursory EA without any public involvement, and failing to consider the cumulative impacts of their activities on wildlife and the environment, defendants were violating NEPA, the Arizona-Idaho Conservation Act, and the APA. Plaintiffs also demonstrated the irreparable harm they would suffer should work on the border wall continue.

28. On October 10, 2007 this Court, finding a substantial likelihood of success on the merits, and that the equities favored plaintiffs, granted the TRO, ordering that "construction of, and the activities related to the construction of, all border walls, fences or roads within the San Pedro Riparian National Conservation Area be halted immediately pending further order of the Court." Among other findings, the Court stated that defendants' "discussion of cumulative impacts ... suffer[s] from both a factual and legal flaw," TRO Transcript at p. 91, that Plaintiffs had introduced "sufficient evidence ... to show that [border wall and road construction] could have effects on [wildlife migration]," id. at p. 93, and that defendants' "failure here to not even acknowledge the potential cumulative impacts of anything outside of the San Pedro watershed, including other border fencing areas, renders this EA inadequate under NEPA because the Agency cannot convincingly establish that they have adequately identified relevant areas of environmental concern." Id. at p. 93-94.

29. On October 26, 2007, the DHS Secretary published in the Federal Register a waiver of nineteen environmental laws—including NEPA and the Arizona-Idaho Conservation Act—in connection with border wall construction in "the area in the vicinity of the United States border from approximately 4.75 miles west of the Naco, Arizona Port of Entry to the western

7

boundary of the San Pedro [NCA.]"  See Determination Pursuant to Section 102 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 as Amended by Section 102 of the REAL ID Act of 2005 and as Amended by the Secure Fence Act of 2006.  72 Fed. Reg. 60870.  The Secretary issued this waiver pursuant to Section 102(c)(1) of the Real ID Act, which provides that, "[n]otwithstanding any other provision of law, the Secretary of Homeland Security shall have the authority to waive all legal requirements such Secretary, in such Secretary's sole discretion, determines necessary to ensure expeditious construction" of border roads and barriers."  Pub. L. No. 109-13; 8 U.S.C. § 1103 Note.

30.     The Secretary's waiver states that this area is one of "high illegal entry," and on that basis waives the application of the nineteen laws "to ensure the expeditious construction" of the border wall.  72 Fed. Reg. 60870.  The nineteen laws waived are: NEPA, the Endangered Species Act, the Clean Water Act, the National Historic Preservation Act, the Migratory Bird Treaty Act, the Clean Air Act, the Archeological Resources Protection Act, the Safe Drinking Water Act, the Noise Control Act, the Solid Waste Disposal Act, as amended by the Resource Conservation and Recovery Act, the Comprehensive Environmental Response, Compensation, and Liability Act, the Federal Land Policy and Management Act, the Fish and Wildlife Coordination Act, the Archeological and Historic Preservation Act, the Antiquities Act, the Arizona-Idaho Conservation Act of 1988, the Wild and Scenic Rivers Act, the Farmland Protection Policy Act, and the Administrative Procedure Act.

31.     This is the third time in a space of approximately 25 months that DHS Secretary Michael Chertoff has invoked section 102 of the REAL ID Act to waive legal requirements in relation to border wall and road construction.

32.     On September 22, 2005, DHS Secretary Chertoff invoked Section 102 to waive eight laws in relation to a 14-mile San Diego border fence project:  NEPA, the ESA, the Coastal Zone Management Act, the Clean Water Act, the National Historic Preservation Act, the Migratory Bird Treaty Act, the Clean Air Act, and the Administrative Procedure Act.  70 Fed. Reg. 55622-23.

8

33. On January 19, 2007, Secretary Chertoff for a second time invoked the waiver authority under section 102, this time to waive nine laws in relation to border barriers and roads "in the vicinity of the United States border known as the Barry M. Goldwater Range": NEPA, the ESA, Clean Water Act, the Wilderness Act, the National Historic Preservation Act, the National Wildlife Refuge System Administration Act, the Military Lands Withdrawal Act of 1999, the Sikes Act, and the Administrative Procedure Act. 72 Fed. Reg. 2535-36.

## FIRST CLAIM

### Constitutional Violations

34. Paragraphs 1 through 33 are fully incorporated into this paragraph.

35. Under the REAL ID Act, once the DHS Secretary invokes the waiver authority, the "only cause of action or claim" that may be brought arising from the waiver is one "alleging a violation of the Constitution of the United States." § 102(c)(2)(A). The Act further provides that "[t]he district courts of the United States shall have exclusive jurisdiction to hear all causes or claims arising from any" such action, which "shall be filed not later than 60 days after the date of action or decision" at issue. Pub. L. No. 109-13; 8 U.S.C. § 1103(c)(2)(A) Note.

36. Article I, Section 1 of the United States Constitution directs that "[a]ll legislative Powers herein granted shall be vested in a Congress of the United States." Similarly, Article II, Section 1 of the Constitution states that "[t]he executive Power shall be vested in a President of the United States of America."

37. Under these constitutional provisions, Congress may not delegate legislative authority to an executive branch agency.

38. Section 102 of the REAL ID Act, Pub. L. No. 109-13; 8 U.S.C. § 1103 Note, impermissibly delegates legislative powers to the DHS Secretary, a politically-appointed Executive Branch official.

39. DHS Secretary Michael Chertoff's waiver of nineteen laws in relation to border wall and road construction on the San Pedro NCA, 72 Fed. Reg. 60870, is unconstitutional for the same reasons.

40. These constitutional violations are injuring plaintiffs in the manner described in paragraphs 7-10 above.

## SECOND CLAIM

### Failure to Prepare a Regional and Comprehensive Environmental Impact Statement

41. Paragraphs 1 through 40 are fully incorporated into this paragraph.

42. NEPA requires each federal agency to prepare and circulate for public review and comment a detailed Environmental Impact Statement ("EIS") prior to undertaking any major federal action that may significantly affect the quality of the human environment. 42 U.S.C. § 4332(2)(C). Whenever a project may have significant environmental impacts, an EIS is required.

43. NEPA also requires that where several related projects within a region will have cumulative and synergistic impacts on the environment, an agency must consider and disclose the environmental impacts of such actions in a single, comprehensive EIS. NEPA prohibits agencies from segmenting their analysis by breaking down a project into smaller components to diminish their environmental impacts.

44. Defendants are engaged in the simultaneous planning and development of projects to construct walls, fences, and other barriers, along with related infrastructure such as roads, at numerous locations along the U.S.-Mexico border in the State of Arizona. Construction of these projects will have significant individual, cumulative, and synergistic effects on wildlife and other natural resources within this region.

45. Defendants are also constructing one contiguous border wall west from Douglas, Arizona to the San Pedro NCA. This contiguous segment of the overall border wall also has cumulative and synergistic impacts on wildlife and natural resources in this area of the State.

46. Defendants are violating NEPA by failing to prepare a comprehensive EIS considering and disclosing the individual, cumulative and synergistic impacts of their actions to build walls, fences, or other barriers, and related infrastructure such as roads, along the U.S.-Mexico border in the State of Arizona. Defendants are also violating NEPA by failing to prepare

10

a single EIS on the entire contiguous border wall from Douglas, Arizona to the San Pedro NCA. Defendants' failure to comply with NEPA is arbitrary, capricious, and otherwise contrary to law, in violation of the APA, 5 U.S.C. § 706.

47.     These legal violations are injuring plaintiffs in the manner described in paragraphs 7-10 above.

### THIRD CLAIM

### Failure to Prepare an Environmental Impact Statement on the Border Wall in the San Pedro NCA

48.     Paragraphs 1 through 47 are fully incorporated into this paragraph.

49.     BLM's issuance of a right-of-way for construction of a border wall and all-weather road along the U.S.-Mexico border in the San Pedro NCA will cause severe and irreparable harm to the San Pedro River and its watershed, as well as wildlife and other natural resources within the San Pedro NCA.  Construction of the wall, vehicle barriers and road will cause increased sedimentation and erosion into the San Pedro River, potentially resulting in significant changes in the river's course and hydrology, bank failure and loss of riparian vegetation.  Construction of the wall, vehicle barriers, and road will also cause severe and irreparable harm to wildlife, severing and preventing natural migration of wildlife populations along the U.S.-Mexico border, and threatening their genetic viability and long-term survival. BLM's action will thus significantly affect the quality of the human environment.

50.     BLM violated NEPA when it failed to prepare an EIS before deciding to issue the right-of-way to the Corps for construction of the border wall and road.  BLM's FONSI, and its failure to prepare an EIS, are arbitrary, capricious, and otherwise contrary to law, in violation of the APA, 5 U.S.C. § 706.

51.     These legal violations are injuring plaintiffs in the manner described in paragraphs 7-10 above.

## FOURTH CLAIM

### Failure to Prepare an Adequate Environmental Assessment

52. Paragraphs 1 through 51 are fully incorporated in this paragraph.

53. NEPA, and regulations promulgated by the Council on Environmental Quality and by federal agencies to implement that Act, require federal agencies to assess the potential environmental effects of a proposed action in an Environmental Assessment ("EA") in order to determine whether an EIS should be prepared for such actions and otherwise to assist the agency in complying with NEPA's purposes.  NEPA also requires federal agencies to encourage and facilitate public involvement in decisions that affect the quality of the human environment, to involve the public in implementing agencies' NEPA procedures, and to involve the public in the preparation of EAs.

54. BLM's Border Fence EA gave inadequate consideration to the potential environmental impacts of the Corps' construction of a border wall, barriers, and road within the San Pedro NCA.  Among other flaws, BLM's EA failed to consider adequately impacts on wildlife, such as sub-tropical species that reach the northern extent of their ranges within the San Pedro NCA and surrounding area and thus will potentially be eliminated from the United States by the construction, did not adequately consider reasonable alternatives, and failed to consider the likely and foreseeable cumulative impacts that the proposed construction within the San Pedro NCA will have, when taken together with other proposed and constructed walls, fences, barriers, and related infrastructure along the U.S.-Mexico border in the State of Arizona, on wildlife and other natural resources in the region.

55. BLM also violated NEPA by issuing its EA and FONSI in this case without any notice to the public, any attempt to obtain public input on the public values and uses of the San Pedro NCA that could be affected by construction of the proposed border wall, barriers, and road, or any opportunity for the public to comment on the proposed construction and its potential impacts.

56. BLM's reliance on its EA to inform itself of the potential environmental impacts of its proposed issuance of the right-of-way to the Corps, and to determine whether to prepare an EIS in connection with that action, and its failure to include any public involvement in the process, violated NEPA and the regulations implementing that Act, and was arbitrary, capricious, and otherwise contrary to law, in violation of the APA, 5 U.S.C. § 706.

57. These legal violations are injuring plaintiffs in the manner described in paragraphs 7-10 above.

## FIFTH CLAIM

### Violation of the Arizona-Idaho Conservation Act of 1988

58. Paragraphs 1 through 57 are fully incorporated in this paragraph.

59. The Arizona-Idaho Conservation Act of 1988, 100 P.L. 696, 102 Stat. 4571, established the San Pedro NCA, and charged the BLM with managing the area "in a manner that conserves, protects, and enhances the riparian area and the aquatic, wildlife, archeological, paleontological, scientific, cultural, educational, and recreational resources of the conservation area." 16 U.S.C. § 460xx-1(a). The Act directs BLM to "only allow such uses of the conservation area as [it] finds will further [these] primary purposes." 16 U.S.C. § 460xx-1(b).

60. BLM's issuance of a right-of-way to the Corps to construct the proposed border wall and road will have serious adverse effects on the San Pedro River, its riparian area, and on wildlife and other resources protected within the San Pedro NCA. BLM's EA and associated decision documents do not acknowledge the agency's duty under the Arizona-Idaho Conservation Act of 1988 to "conserve, protect, and enhance" the natural and cultural resources of the San Pedro NCA, and do not consider how its issuance of the right-of-way comports with that duty. BLM's issuance of the right-of-way thus violated its mandatory duty under the Arizona-Idaho Conservation Act of 1988, and was arbitrary, capricious, and otherwise contrary to law, in violation of the APA, 5 U.S.C. § 706.

61. These legal violations are injuring plaintiffs in the manner described in paragraphs 7-10 above.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that the Court:

(1) Declare that the waiver of laws authority contained in section 102 of the REAL ID Act, Pub. L. No. 109-13; 8 U.S.C. § 1103 Note, violates the U.S. Constitution's fundamental Separation of Powers principles by impermissibly delegating legislative authority to a politically-appointed Executive Branch official;

(2) Declare that the DHS Secretary's October 26, 2007 waiver of nineteen laws in connection with the border wall in the vicinity of the San Pedro NCA violates the U.S. Constitution's fundamental Separation of Powers principles because it constitutes an exercise of legislative authority constitutionally permissible only when undertaken by the Legislative Branch;

(3) Set aside the waiver of laws authority contained in section 102 of the REAL ID Act, and the Secretary's October 26, 2007 exercise of that waiver authority;

(4) Declare that Defendants have violated NEPA, the Arizona-Idaho Conservation Act of 1988, and the Administrative Procedure Act;

(5) Order Defendants to prepare a regional and comprehensive EIS assessing and disclosing the environmental impacts, including cumulative impacts, that will be caused by construction of all currently planned or foreseeable construction of walls, fences, or other barriers and related infrastructure along the U.S.-Mexico border in the State of Arizona, including the contiguous fence from Douglas, Arizona to the San Pedro NCA, and considering reasonable alternatives to such walls, fences, or barriers and infrastructure, in accordance with NEPA;

(6) Order Defendants to prepare an EIS assessing and disclosing the environmental impacts that will be caused by construction of the proposed border wall, vehicle barriers and permanent road on the San Pedro NCA, and considering reasonable alternatives to the proposed wall, vehicle barriers and road, in accordance with NEPA;

(7) Set aside the right-of-way issued by BLM to the Corps on August 31, 2007;

(8) Require defendants to remediate and/or mitigate the environmental effects of border wall and road construction within the San Pedro NCA until Defendants come into compliance with all applicable laws, including, but not limited to, removing the temporary vehicle barriers in the San Pedro River;

(9) Enjoin Defendants from constructing any border wall, fence, or other barrier, and any related infrastructure, along the U.S.-Mexico border in the State of Arizona until Defendants come into compliance with all applicable laws;

(10) Award Plaintiffs their costs and reasonable attorney fees in this action; and

(11) Grant such other and further relief as the Court may deem just and proper.

Date: November 1, 2007

Respectfully submitted,

__/s/_____
Brian Segee, D.C. Bar No. 492098
Defenders of Wildlife
1130 17th Street, N.W.
Washington, D.C. 20036
(202) 682-9400


__/s/_____
Robert G. Dreher, D.C. Bar No. 398722
Defenders of Wildlife
1130 17th Street, N.W.
Washington, D.C. 20036
(202) 682-9400


__/s/_____
Howard M. Crystal (D.C. Bar. No. 446189)

                    Meyer Glitzenstein & Crystal
                    1601 Connecticut Avenue, N.W., Suite 700
                    Washington, D.C.  20009
                    (202) 588-5206
                    (202) 588-5049 (fax)

Counsel for Plaintiffs