UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DEFENDERS OF WILDLIFE and SIERRA CLUB; <br><br> Plaintiffs, <br><br> vs. <br><br> Hon. MICHAEL CHERTOFF, Secretary, Department of Homeland Security, et al., <br><br> Defendants. | Case No: 07-1801 (ESH) <br><br> **PLAINTIFFS' LODGED SURREPLY TO DEFENDANTS' RENEWED MOTION TO DISMISS** |

**ARGUMENT**

I.  **THIS CASE IS SQUARELY GOVERNED BY THE SUPREME COURT'S RULING IN *CLINTON V. NEW YORK***

Arguing that the REAL ID waiver authority differs from the Line Item Veto Act in "both form and effect," and that "[p]laintiffs confuse waiver with amendment and repeal," defendants assert that plaintiffs' reliance upon *Clinton v. New York*, 524 U.S. 417 (1998), is "misplaced." Def. Reply at 2, 5.  The lesson of *Clinton*, however, is that function triumphs over form.  The Line Item Veto Act, like the REAL ID Act, did not by its plain terms authorize the Executive to "amend" or "repeal" statutes, but to "cancel" portions of them.  *Clinton*, 524 U.S. at 436.  Under *Clinton*, regardless of whether an action taken by the Executive is labeled as "amendment," "repeal," "cancellation," "waiver," or otherwise, if its "practical and legal effect" is legislative, Article I procedures of bicameral passage and presentment to the President must be abided by. *Id*. at 438.[1]  *Clinton* squarely applies in this case because, under any reasonable interpretation, Secretary Chertoff's October 27, 2007 waiver had the legal and practical effect of repealing the laws at issue in this case (as well as sixteen other laws) to the extent that they otherwise would have applied to wall and road construction on the San Pedro Riparian National Conservation Area ("San Pedro NCA").  Within that sensitive tract of public land, those laws simply no longer exist with respect to such construction activities, and the lawless zone created by the Secretary can, in his sole discretion, be expanded to the entire 7,500 mile border of the United States.

The Court in *Clinton* did not, as defendants suggest, establish "the permanent alteration of statutory text by the President" as a threshold test for characterizing an action as legislative.

---

[1] *See also Metro. Washington Airports Auth. v. Citizens for the Abatement of Aircraft Noise, Inc.*, 501 U.S. 252, 267 (1991) ("'separation-of-powers analysis does not turn on the labeling of an activity.'") (*quoting Mistretta v. United States*, 488 U.S. 361, 393 (1989)); *INS v. Chadha*, 462 U.S. 919, 952 (1983) (whether an action is "an exercise of legislative power depends not on [its] form.").

1

Def. Reply at 6. When the President exercised the authority granted to him under the Line Item Veto Act, his actions "[left] the statutes, as they are literally written, intact." *Clinton*, 524 U.S. at 474 (Breyer, J., dissenting). Instead, the Court in *Clinton* was concerned with the fact that the President's cancellation authority precluded the cancelled item "*from having legal force and effect*." *Clinton*, 524 U.S. at 438 (emphasis added). Based on this pragmatic consideration, the Court concluded that "[i]n both legal and practical effect, the President has amended two Acts of Congress by repealing a portion of each." *Id*. Similarly, although all nineteen of the statutes waived by the DHS Secretary in his October 27 *Federal Register* notice are still, as noted by the government, "valid law and [] fully applicable outside" the San Pedro NCA, Gov't Reply at 6, the Secretary's waiver of those laws *within* the San Pedro NCA are plainly, under *Clinton*, an impermissible exercise of legislative authority. *Cf. Robertson v. Seattle Audubon Soc'y*, 503 U.S. 429, 438-441 (finding that legislation suspending application of environmental statutes to pending cases "modified" those statutes, and thus "*did* amend applicable law.") (emphasis in original).[2]

Because the REAL ID Act waiver authority is properly governed by the *Clinton* decision, the cases relied upon by the government involving the nondelegation doctrine are inapposite to plaintiffs' argument that defendants' actions have violated the bicameral passage and presentment requirements of Article I. *See* Gov't Reply at p. 9-10. While the ordinary limits on the extent of permissible delegation may not apply fully in matters involving immigration and national security, the government cites to no authority suggesting that similar leeway is granted

---

[2] *See also Seattle Audubon Soc'y v. Robertson*, 1989 U.S. Dist. LEXIS 15073 (W.D. Wash. Nov. 14, 1989) at *6-7 ("Just as Congress may create a geographic exception to the environmental laws, it may also create a temporal exception. It has done that here . . . Section 318 can and must be read as a temporary modification of the environmental laws. As such it is well within Congress's constitutional power.").

2

when the Article I requirements of bicameral passage and Presidential presentment are at issue. Such an argument would open a vast and dangerous chasm in the Framer's careful structure for cabining the legislative power, allowing the President to make or dispense with law as he deems fit in these areas of public policy, perhaps even without Congressional imprimatur. Given the plain violation of Article I in this case, the Secretary's action must be declared by this Court as void.

## II.  THE WAIVER AUTHORITY UNDER SECTION 102 OF THE REAL ID ACT IS *SUI GENERIS*

In its reply brief, the government downplays the extraordinary breadth of powers granted to the DHS Secretary by section 102 of the REAL ID Act, stating that "Congress commonly provides the Executive Branch the authority to waive preexisting laws." Gov't Reply at 7. This point, however, has never been in contention. *See* Plf. Response at 3 ("There have, of course, been prior instances of legislative waivers."). As plaintiffs emphasized throughout our response brief, while waiver legislation may be relatively common, the scope of the section 102 REAL ID Act waiver authority is unprecedented in our Nation's history. *Id*. at 22-25.

The government's attempt to cast the REAL ID Act's waiver power as unremarkable only serves to underscore how section 102 is, without overstatement, *sui generis*. *See* Gov't Reply at 6-9. The majority of statutes relied upon by the government in its effort to paint the REAL ID waiver authority as "common" are instead extremely limited waiver provisions applicable to requirements within the same statute[3]—a category of waivers directly addressed in

---

[3] *See, e.g.*, 15 U.S.C. § 2621 (relating to disposal of chemical weapons under the Toxic Substances Control Act); 22 U.S.C. § 7207(a)(3) (relating to foreign assistance to Iran, Libya, North Korea, and Sudan under the Agriculture, Rural Development, Food and Drug Administration, and Related Agencies Appropriations Act of 2001); 42 U.S.C. § 7545(m) (relating to gasoline oxygen content standards under Clean Air Act); 50 U.S.C. § 1701 Note (relating to sanctions on Sudan under Darfur Peace and Accountability Act of 2006).

3

plaintiffs' response brief (and distinguished in the Supreme Court's discussion in *Clinton*, 524 U.S. at 444). Moreover, one of cited statutes in fact requires Congressional approval of the exercise of the waiver authority provided, directly undermining the government's own argument. *See* 43 U.S.C. § 2008 (Public Utilities Regulatory Act of 1978) ("The provisions so identified shall be waived with respect to actions to be taken to construct or operate such system or project only *upon enactment of a joint resolution within the first period of 60 calendar days of continuous session of Congress beginning on the date of receipt by the House of Representatives and the Senate of such proposal*.") (emphasis added).

Of the statutes relied upon by the government, only the waiver provision of the Trans-Alaska Pipeline Authorization Act ("Pipeline Authorization Act"), P.L. 93-153, is remotely analogous to the REAL ID Act waiver provision. Even here, however, the government's contention that "Congress has authorized particularly broad waivers, where, as here, it has expressed an interest in the expeditious construction of a public works project," overstates the case. Gov't Reply at 8. Unlike section 102 of the REAL ID Act, which permits the DHS Secretary to waive *any* law of the land, section 203(c) of the Pipeline Authorization Act by its plain terms relates solely to the "Applicability of statutes governing rights-of-way for pipelines through Federal lands." 43 U.S.C. § 1652(c). Moreover, such laws were not in fact truly "waived"; rather, their requirements were integrated into the authorization under the Pipeline Act. As stated in the Act's Conference Report:

> Section 203(c) provides that, if under *any other statute a Federal agency could have issued an authorization relating to the construction of the trans-Alaska pipeline system*, the agency shall issue such authorization, but it shall act under the authority of subsection 203(b) of this Title and not under the authority of the other statute. Authorizations issued under subsection 203(b) shall contain all those provisions that the supplanted statute would have required, and may include provisions which were authorized but not required by the supplanted statute . . . The determination of applicability is left to the Secretary's judgment.

4

Joint Conf. Rep. 93-924 (1973), *reprinted in* 1973 U.S.C.C.A.N. 2523, 2529 (emphasis added).[4]
In any event, the Pipeline Authorization Act offers no useful precedent, as no court has ever passed on its constitutionality. *Cf. Chadha*, 462 U.S. at 959-60 (Powell, J., concurring) (noting that Supreme Court was striking down legislative veto despite fact that Congress had included such vetoes "in literally hundreds of statutes, dating back to the 1930's.").

Thus, contrary to defendants' arguments, the waiver authority in this case is far different from that granted by Congress in prior acts, and is essentially on all fours with the unconstitutional "cancellation" power in the Line Item Veto Act. Here, as in *Clinton*, the waiver does not really depend upon the occurrence of specific subsequent events; the potential for compliance with procedural requirements of laws like NEPA to slow construction of a border wall was presumably obvious to anyone at the time of enactment. More importantly, the Secretary's exercise of the waiver authority here cannot be said to carry out the policy of Congress, since (unlike the waiver in *Field v. Clark*, 143 U.S. 649 (1892)), in which the provisions to be waived were part of the same bill as the waiver) Congress never contemplated in enacting NEPA and the other laws at issue that they should be repealed in these circumstances. Indeed, the Secretary's waiver in this case cannot be said to reflect Congress's own determination that the laws in question should be repealed at all, since his action was entirely at his own discretion, rather than mandated by Congress in the event that specified circumstances arose. In all of these respects, the waiver authority in this case is identical to the Line Item Veto

---

[4] Further underscoring the limited nature of section 203(c), in the next subsection, section 203(d), Congress itself specifically directed that the requirements of the National Environmental Policy Act were "bypassed," rather than leaving such waiver to the Secretary. 16 U.S.C. § 1652(d).

5

Act's "cancellation" authority struck down in *Clinton*, and a far cry from the routine waivers upheld in *Field v. Clark.*.

Finally, the government cites to *Acree v. Iraq*, 370 F.3d 41 (D.D.C. 2004) and *Jacobsen v. Oliver*, 451 F. Supp. 2d 18 (D.D.C. 2006) for the proposition that the Federal District Court for the District of Columbia "has recently distinguished the cancellation authority rejected by the Supreme Court in *Clinton* from statutory waiver authority granted to the Executive Branch." Gov't Reply at 6. The Court in *Acree*, however, explicitly declined to address plaintiffs' constitutional arguments. 370 F.3d at 48. Judge (now Chief Justice) Robert's statement in *Acree* was made in a concurring footnote and thus, unlike *Clinton*, does not constitute controlling authority. Moreover, Judge Roberts noted that the waiver at issue in that case is analogous to "the waivers that the President is routinely empowered to make in other areas, particularly in the realm of foreign affairs." *Id*. at 64 n.3; *see also Jacobsen*, 451 F. Supp. 2d at 193 ("The United States intervened to argue that the presidential waiver at issue was constitutional and served to protect the President's foreign policy power."). As plaintiffs have amply demonstrated, the REAL ID Act waiver authority is anything but "routine."

The government's warning that "[u]sing Plaintiffs' logic . . . every other grant of executive waiver [] could be re-characterized as one permitting amendment or repeal of the statute subject to waiver" is thus without foundation. Gov't Reply at 10. Plaintiffs have never argued, as misleadingly suggested by the government, that "every executive waiver of a statutory provision pursuant to express congressional authorization constitutes an impermissible amendment to the statute." *Id*. To the contrary, plaintiffs have emphasized throughout their briefing that section 102 of the REAL ID Act is a unique and dangerous species of waiver authority, one that impermissibly "provide[s] a blueprint" for future unconstitutional expansions

of Executive power. *Metro Wash. Airports*, 501 U.S. at 277. Never before has an Executive Branch official been granted the unfettered authority to waive any federal, state, or local law in his "sole discretion." 8 U.S.C. § 1103 Note. The unique reach of this provision indicates that a decision upholding plaintiffs' constitutional allegations would be correspondingly narrow—a decision that plaintiffs respectfully urge the Court to make in this case.

## CONCLUSION

For the foregoing reasons, plaintiffs respectfully request that the Court deny defendants' renewed motion to dismiss, and that it vacate section 102 of the REAL ID Act, 8 U.S.C. § Note, as unconstitutional.

Respectfully Submitted this 29th day of November, 2007.

_____/s/_____
Brian Segee (D.C. Bar. 492098)
Defenders of Wildlife
1130 Seventeenth Street, N.W.
Washington, D.C. 20036
(202) 682-9400
(202) 682-1331 (fax)

_____/s/_____
Robert Dreher (D.C. Bar. 398722)
Defenders of Wildlife
1130 Seventeenth Street, N.W.
Washington, D.C. 20036
(202) 682-9400
(202) 682-1331 (fax)

_____/s/_____

Howard M. Crystal (D.C. Bar. No. 446189)
Meyer Glitzenstein & Crystal
1601 Connecticut Avenue, N.W., Suite 700
Washington, D.C. 20009
(202) 588-5206
(202) 588-5049 (fax)

_____/s/_____

David C. Vladeck (D.C. Bar No. 945063)
Georgetown University Law Center
600 New Jersey Avenue, N.W.
Washington, D.C.  20001
(202) 662-6540

Counsel for Plaintiffs